Hillsborough,
Mar. 7, 1950. } No. 3865.

AMORY WORSTED MILLS, INC. & a.

*v.*

WILLIAM RILEY, *Comm'r of Labor & a.*

*McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the appellants.

*F. Maurice LaForce* (by brief and orally), for the Commissioner.

*Sheehan, Phinney & Bass*, for the claimants, filed no brief.

JOHNSTON, C. J. The claims of the respective parties raise the issue of whether the claimant-employees are disqualified for unemployment compensation benefits under R. L., c. 218, s. 4 D. The first part of this subsection provides that an individual shall be disqualified: "For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this subsection shall not apply [under certain conditions set out in provisions quoted below]."

It is agreed that there was a stoppage of work at the factories of both the appellant companies. In each case it was because of a labor dispute. This dispute concerned the right of the employer to use non-union supervisory persons on maintenance jobs contrary to the agreements. "For present purposes, suffice it to hold that a labor dispute, within the meaning . . . of the act, is any controversy concerning wages, hours, working conditions or terms of employment." *Local Union No. 11* v. *Gordon*, 396 Ill. 293, 299. The disputes under consideration involved working conditions and terms of employment. For the purpose of determining the existence of the disputes, their merits are immaterial.

Under the statute, in order not to be disqualified, claimants must show either that they did not participate in, finance or were not directly interested in the labor dispute, and that they did not belong to a grade or class of workers, members of which were so involved, or secondly that the stoppage of work was due solely to the employer's violation of the agreement.

The statutory part of 4 D relating to the first way of showing no disqualification for benefits requires the claimant to establish that: "(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and (2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom

are participating in or financing or directly interested in the dispute; provided that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises; . . . ."

Concerning the activities of the employees of Amoskeag Mills, the Trial Court found as follows: "A meeting of Local No. 864 TWA (CIO) was held during the afternoon [of August 4], at which it was unanimously voted to refuse to work on materials transported by supervisors." Again, it was found: "Some employees in every department of Amoskeag Mills refused to perform work which was available, said work having been transported, however, by supervision; and as a result of these refusals to work on the part of many employees, it was necessary to close down the entire operation of Amoskeag Mills except for mending, and the mill was so closed down after the second shift on August 4 until the morning of August 21. Some of these employees refused to work on materials transported by supervision; others were sent home by management because of lack of work." In view of these findings it is impossible to conclude that there was any grade or class of workers at the Amoskeag Mills that did not participate in the labor dispute.

A vote by a union to refuse to work on materials transported by non-union supervisors is participation in the dispute over the right of management to have the materials so carried. Members cannot so vote and then complain that there was an involuntary shortage of work for which they were not responsible when the shortage resulted from the vote. *McKinley* v. *California Employment Stabilization Com.* 209 P. (2d) (Cal.) 602.

Moreover, when a walk-out takes place for the purpose of enforcing the union security provisions of a contract, all members of the union are equally and directly interested in the labor dispute that leads to the stoppage of work. "It is not only those who foment the strike or bring it about who are ineligible, but the group to which such persons belong—however inclusive—the group for whose benefit the strike is called." *Members Iron Workers* v. *Industrial Commission*, 104 Utah 242, 253; *Wasyluk* v. *Mack Mfg. Corporation*, 4 N. J. Super. 559; *Chrysler Corp.* v. *Smith*, 297 Mich. 438; *In re Deep River Timber Company*, 8 Wash. (2d) 179. See also, Milton I. Shadur, Unemployment Benefits and the "Labor Dispute" Disqualification, 17 University of Chicago Law Review 294-329.

A similar vote was unanimously passed by the union of the employees of Amory Worsted. The Court found: "A meeting of Local No. 897 TWA (CIO) was held during the morning of August 5, 1947, at which it was unanimously voted to refuse to work on materials processed by steam produced by supervisory employees of Amoskeag-Lawrence." It was also found: "All of the production employees of Amory Worsted acted voluntarily and in concert through their union to cause the work stoppage at Amory Worsted"; and "There were never any maintenance employees on the Amory Worsted payroll."

No claimant-employee of either appellant company has shown that no member of the grade or class of workers to which he belonged participated in or was directly interested in the dispute that caused the stoppage of work.

However, it is urged that the stoppage of work in each factory was due solely to the employer's violation of its agreement and that accordingly the claimants are entitled to benefits. This part of subsection 4 D states the second method of establishing freedom from disqualification: "(3) The stoppage of work was due solely to the failure of the employer to live up to the provisions of any contract entered into between the employer and his employees."

The Commissioner argues that, if there was such violation and a stoppage of work resulted, the disqualification for benefits does not apply. This overlooks and gives no effect to the word "solely." If the employees were also guilty of violating their contracts and such violations contributed to the stoppage of work, then any fault of management cannot be the sole cause of the stoppage. Labor has no more right to break its contracts than management.

The preamble of the agreement of Amoskeag Mills recites: "Whereas, it is the intent and purpose of the parties . . . to provide means for the amicable adjustment of all disputes and grievances in the mill . . . . " Article V provided four steps for the adjustment of grievances, the fourth being arbitration under Article VI, all to be used if necessary, "should an employee have any grievance." Step 4 was not used but instead there was an unauthorized walkout, so called, which caused the work stoppage. Article VI deals with "no strikes or lockouts" and "arbitration." It recites: "this agreement provides for the orderly and amicable settlement and adjustment of any and all disputes, differences and grievances." Further, "Any dispute, difference, disagreement or controversy of any nature or character, whether or not a grievance, between the Union and the Employer . . . shall be promptly referred to arbitration . . . . "

It is unnecessary to quote the provisions of the agreement with Amory Worsted. They were similar and to the same effect.

With respect to the claimant-employees of Amoskeag Mills, the Court ruled that the employer violated the union shop provisions of the contract and that this was more than a grievance and that it was a violation of a basic condition of employment. However, as seen from the above quoted provisions, the agreement makes no such distinction and we are unable to find authority for it.

Unless the refusal of the claimants to adjust the grievances and to submit the dispute to arbitration can be justified, any violation of the contract by the employer is not the sole cause of the stoppage of work. An unjustified breach by the employees may and in this case does contribute. The test established by the statute is not whether the conduct of the employer was the first or antecedent cause but whether it was the sole cause.

It may be that a stoppage of work by employees can be justified where there are no contract provisions for adjustment of grievances and for arbitration, where an employer refuses to arbitrate, where he refuses to abide by an arbitration award or where there is a serious breach of duty by him towards the employees; but no one of these situations includes the present case.

The use of supervisory non-union employees temporarily on jobs of maintenance was not a serious matter at all for the union employees. There was evidence that one of the supervisors had on occasions prior to August, 1947 brought material on the elevator in the manner now complained of. There was also testimony that the employees themselves asked that some of the material be carried in this same way at the time of the present dispute. The object of employment is the production of goods with resulting income to both labor and management. The contracts themselves provided that non-union help might be employed for a period of thirty days. While this may not apply to the use of supervisors on maintenance work, it does indicate that the dispute that caused the walk-out was not outside the scope of the adjustment and arbitration provisions of the contracts. It is difficult to conceive that the stoppage of work was not related to the strike of the Amoskeag-Lawrence employees. Here there was no justification for the refusal of the employees of either appellant company to abide by the contract provisions for adjustment and arbitration. The stoppage of work was not caused in the case of either employer solely by its failure to live up to the provisions of its contract.

168

The claimants have failed to show either under (1) and (2) or under (3) of R. L., *c.* 218, *s.* 4D that they are not disqualified for benefits.

*Judgment for the appellants.*

LAMPRON, J., did not sit: the others concurred.