29 N.J. Super. 26 (1953)
101 A.2d 573
THE GREAT A. & P. TEA COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF UNEMPLOYMENT COMPENSATION, BOARD OF REVIEW, RESPONDENT; MARY DRUSDOW, ANNA L. FORMICA, ET ALS., CLAIMANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 14, 1953.
Decided December 17, 1953.
*28 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Paul Rittenberg appeared for appellant (Mr. Marcus Mandelbaum, attorney).
Mr. Clarence F. McGovern, attorney for respondent Board of Review, Division of Employment Security, New Jersey Department of Labor and Industry.
The opinion of the court was delivered by GOLDMANN, J.A.D.
The Great A. & P. Tea Company appeals from a number of determinations of the Board of Review, Division of Employment Security, Department of Labor and Industry, allowing claims for unemployment benefits filed by former employees. The appeal is by stipulation limited to a review of the claims of Mary Drusdow and Anna L. Formica, the determination of these claims to be dispositive of the rest.
Drusdow, Formica and some 30 others were employed by the A. & P. as egg candlers in its Paterson warehouse. They normally worked 40 hours a week, Monday through Friday. Because of the busy Lenten season appellant proposed that beginning with the week of March 9, 1953 groups of the employees were to work Saturdays on an alternating or staggered basis; each employee would work every sixth *29 Saturday, receiving a day off during the week in which such Saturday work occurred. The company presented the plan to its employees on Tuesday, March 3, 1953. It was not well received. The next day, March 4, claimants came to the warehouse but refused to work despite the requests of management. After some urging an employees' committee was formed; it met with management and reported back to the others, but they refused to work, insisting that future employment hours be settled without delay. Further efforts to get claimants to return to work proved fruitless; in midafternoon management told them that if they did not intend to work they should leave the premises. They did. The following day, Thursday, March 5, the employees were refused entrance to the warehouse; the few who managed to get in found that all time cards were out of the rack. The aid of union representatives was sought, membership cards were signed, and a picket line established that afternoon. On Friday, March 6, management notified the employees that it was discontinuing the egg candling operation at the Paterson warehouse and that they could pick up their checks in final payment of wages. When the union told the employees that nothing further could be done they at once reported to their local claims division and filed claims for unemployment compensation.
The claim of Mary Drusdow was rejected because she had quit voluntarily without good cause. R.S. 43:21-5(a). On appeal, the Appeal Tribunal of the Division of Employment Security affirmed the determination. On further appeal to the Board of Review, the board determined there had been a work stoppage from March 3 through March 6 due to a labor dispute, and hence Drusdow was disqualified under R.S. 43:21-5(d) for the week ending March 7, 1953. However, the work stoppage having ended when the employer made new arrangements for getting the egg candling work done elsewhere, thereby eliminating claimant's job, Drusdow was held eligible for benefits for all weeks of unemployment after March 7, 1953, partial or total. The employer's petition for a rehearing was denied.
*30 The claim of Anna L. Formica was initially rejected because she had walked off the job without attempting to adjust her grievance with the employer. On appeal, the Appeal Tribunal held there had been a work stoppage from March 3 through March 6 because of a labor dispute; that the stoppage was brought to an end by the employer's decision to abandon the egg candling operation after March 6, and that although Formica was disqualified for unemployment benefits through March 6, 1953 under R.S. 43:21-5(d), she was eligible for benefits thereafter. The decision of the Appeal Tribunal was affirmed by the Board of Review.
On this appeal the employer contends that Drusdow and Formica were disqualified for unemployment benefits under R.S. 43:21-5(a) because they left their work voluntarily without cause. We do not agree. The refusal of the egg candlers to work was a concerted action designed to bring about a change in the employer's decision to institute a new work schedule, so that they might retain the conditions of employment they had enjoyed throughout their previous service. Their actions on March 4 in insisting upon a settlement of their future employment hours shows this. The attempt the next day, through union organization and picketing, to bring the employer to their view, is further evidence that they expected to return to work when a more acceptable program of hours had been agreed upon. In short, claimants did not intend to relinquish their jobs nor did they quit their jobs. They are not disqualified under R.S. 43:21-5(a).
We agree with the Board of Review's finding that there was a work stoppage on March 4 because of a labor dispute, and therefore the provisions of R.S. 43:21-5(d) come into play. Although "labor dispute" is not defined in the Unemployment Compensation Act, it is in other labor enactments. The term broadly includes any controversy concerning terms or conditions of employment or arising out of the respective interests of employer and employee. Ablondi v. Board of Review, 8 N.J. Super. 71, 76 (App. Div. 1950); cf. Sandoval v. Colorado Industrial Commission, 110 Colo. *31 108, 130 P.2d 930 (Sup. Ct. 1942); Local Union No. 11 v. Gordon, 396 Ill. 293, 71 N.E.2d 637 (Sup. Ct. 1947). The reasonableness or unreasonableness of employee demands, or the merits of the dispute, have no place in determining whether a labor dispute exists. Fash v. Gordon, 398 Ill. 210, 75 N.E.2d 294 (Sup. Ct. 1947). Accordingly, claimants are not entitled to unemployment benefits for the week ending March 7, 1953. R.S. 43:21-5(d).
The employer's decision to abandon the egg candling operation at its Paterson warehouse after March 6, 1953 brought the work stoppage to an end, for there was no work available from that time on. As already stated, it is clear that the workers had not terminated or severed their relationship with the employer; it continued until Friday, March 6, when they were notified that the egg candling operation was discontinued. The claimants are therefore entitled to unemployment benefits for all weeks of unemployment established after March 7, 1953, partial or total, in accordance with the Unemployment Compensation Act  legislation whose underlying policy is the protection of employees from involuntary unemployment (Tube Reducing Corp. v. Unemployment Compensation Commission, 136 N.J.L. 410 (Sup. Ct. 1948), affirmed 1 N.J. 177 (1948)), and which, being remedial in nature, should be liberally construed (Ford Motor Co. v. N.J. Dept. of Labor and Industry, 7 N.J. Super. 30 (App. Div. 1950), affirmed 5 N.J. 494 (1950)).
Affirmed.