75 So.2d 675

**T. R. MILLER MILL COMPANY, Inc.**

v.

**Philip T. JOHNS et al.**

3 Div. 692.

Supreme Court of Alabama.

Nov. 4, 1954.

616

McMillan, Caffey & McMillan, Brewton, Caffey, Gallallee & Caffey, Mobile, for petitioner.

Flournoy Lovelace, Brewton, for appellees.

J. Eugene Foster, Richard S. Brooks, Montgomery, for Dept. of Industrial Relations.

SIMPSON, Justice.

This is a petition for certiorari to the Court of Appeals to review its opinion and judgment affirming an order of the trial court awarding unemployment compensation to workers who had been on strike and on returning to work found their places filled and no work available to them. The Alabama Department of Industrial Relations has appeared by counsel and presented briefs and argument to support the award.

Relevant provisions of the law are subsections A and B of § 214, Title 26, Code 1940, as amended, which read as follows:

"Disqualification for benefits.—An individual shall be disqualified for total or partial unemployment:

"A. For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed; for the purposes of this section only, the term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer.

"B. If he has left his employment voluntarily without good cause connected with such work. * * *"

■ The fundamental theory of unemployment compensation in connection with the above-quoted subsections of the statute is that workers are not entitled to compensation where their unemployment was directly due to a "labor dispute" still in active progress in the establishment where last employed, but that when the strike shall have been ended if his unemployment so resulted he would be entitled to unemployment compensation if thereafter, without his fault, he should be rendered unemployed. Petitioner contends that the employees in striking violated their contract with their employer and that such a controversy was not a labor dispute within the meaning of the statute. It is then argued that since there was no labor dispute, complainants are disqualified under subsec. B above because they left their employment voluntarily without good cause. This seems to have been the thesis of petitioner on original submission, but in its reply brief the argument is also advanced that since the complainants violated their contract they are disqualified under subsec. B regardless of whether or not the controversy was a labor dispute.

The Court of Appeals found that claimants did not violate their contract and that finding is assailed here, but our study of the case has proceeded on a different theory and we have concluded that it is immaterial whether or not there was a violation by the employees of their contract with the employer.

Since much of petitioner's reasoning seems to be rested on the case of Dept. of Industrial Relations v. Stone, 36 Ala.App. 16, 53 So.2d 859, attention will first be directed to that case. It appears from the opinion that the claimants there returned from a vacation to find a notice to the effect that pay was to change from a shift to a tonnage basis, drilling was to be done with a breast auger instead of an electric drill, and workers were to pump accumulating water from the mines and push their own coal cars. The opinion states:

"In this aspect of the evidence the claimants and other experienced coal miners testified that it was humanly impossible for one man to push or convey a loaded coal car; that the drilling could not be conveniently or successfully done with a breast auger; and that one pump was not adequate to keep the pit free of water.

"In short, they testified that work could not be performed under the demanding conditions and any appreciable amount realized from their labors on a tonnage basis." 36 Ala.App. at page 17, 53 So.2d at page 860.

The court then proceeded to state that "Unquestionably the unemployment of instant concern was due to a dispute or disagreement over terms and conditions of employment." Nevertheless the court affirmed the award of compensation for the period the claimants refused to work under the above conditions on the theory that the dispute was not "bona fide" and there was no "integrity of dealings" due to the "unwarranted demand" of the employer.

We think the conclusion in the Stone Case affirming the award of compensation was correct, but that some of the language of the opinion was inapposite thereto. If the court correctly concluded that the unemployment was unquestionably "due to a dispute or disagreement over terms and conditions of employment", this placed claimants squarely within the disqualification of subsec. A of § 214. From the facts set out in the opinion, however, we are unable to discern such was the case, but on the contrary that the employer had set out such rigorous conditions under which anyone could work the complainants were unable to comply therewith even though they were ready, able and willing to undertake employment. These facts, as observed by the Court of Appeals, did not show a "dispute," "controversy" or "disagreement," but that claimants were out of work due to no fault of their own and were within the letter and spirit of the unemployment compensation law so as to be entitled to benefits.

The almost universal concept seems to be that the courts do not concern themselves with a determination of the merits of the labor dispute or who is at fault—employer or employee.

■ Enough has probably 'been said concerning the provisions of the Unemployment Compensation Act and the rules of construction relative thereto, but we are moved to make one further comment. The purpose of unemployment compensation is to alleviate some of the social and economic ills of unemployment and not a device with which to punish an employer (or employee) for industrial sin, see Lawrence Baking Co. v. Michigan Unemployment Compensation Commission, 308 Mich. 198, 13 N.W.2d 260, 154 A.L.R. 660.

All of the states and the District of Columbia now have unemployment compensation statutes containing provisions comparable to subsections A and B of § 214. We have made considerable research and have not found a single instance in decisions of courts or administrative bodies of other jurisdictions where the propositions advanced by the petitioner have. prevailed. There are, however, instances where they have been rejected.

The definition of "labor dispute" found in our law is taken from the National Labor Relations Act, § 2(9), as amended 29 U.S.C.A. § 152(9). Courts of other jurisdictions, in construing laws in which the term "labor dispute" was not defined, have looked to the definition contained in the National Labor Relations Act and similar state enactments. See Alvarez v. Adm'r of Unemployment Compensation Act, 139 Conn. 327, 93 A.2d 298; Dallas Fuel Co. v. Horne, 230 Iowa 1148, 300 N.W. 303; Miners in General Group v. Hicks, 123 W.Va. 637, 17 S.E.2d 810. Decisions from other jurisdictions are therefore of value in considering our own statute.

In considering the Arizona provision disqualifying a person for compensation for any week that his unemployment is due to a stoppage of work due to a labor dispute, the court in Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, 530, said:

"At the outset it should be made clear that this court is not concerned with any questions relative to the *merits* of the labor controversy itself. Our decision is not and cannot be determined by such factors."

In 'a case arising under the National Labor Relations Act, the Supreme Court of the United States in National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 910, 82 L. Ed. 1381, had occasion to observe:

"Under the findings the strike was a consequence of, or in connection with, a current labor dispute as defined in section 2(9) of the act [the definition found in our law] * * *. But it is said that the record fails to disclose what caused these negotiations to fail or to show that the respondent was in any wise in fault in failing to comply with the union's demands; and, therefore, for all that appears, the strike was not called by reason of fault of the respondent. The argument confuses a current labor dispute with an unfair labor practice defined in section 8 of

the act * * *. The finding is that the strike was deemed 'advisable in view of the unsatisfactory state of negotiations' in New York. * * * *The wisdom or unwisdom of the men, their justification or lack of it,* in attributing to respondent an unreasonable or arbitrary attitude in connection with the negotiations, *cannot determine whether, when they struck, they did so as a consequence of, or in connection with, a current labor dispute."* (Italics supplied.)

The North Carolina Court stated in In re Steelman, 219 N.C. 306, 13 S.E.2d 544, 548, that:

"The existence and effect of a labor dispute may have an essential bearing upon the eligibility of claimants, the suitableness of work offered, and the disqualifications for benefits, all of which are to be determined by the Unemployment Compensation Commission according to certain objective standards or criteria, *but the merits* of the labor dispute do not belong to the Commission. These are matters more properly pertaining to the field of labor relations." (Italics supplied.)

To a contention that a labor dispute did not exist after its merits had been determined by the National Labor Relations Board, the Illinois Court in Fash v. Gordon, 398 Ill. 210, 75 N.E.2d 294, 297, said:

"The statute does not undertake to consider which party is responsible for the stoppage, the material element being is there a stoppage of work caused by a labor dispute? * * *

"While no Illinois decision has been called to our attention, the almost unanimous holdings of jurisdictions where the question has arisen have been that the reasonableness or unreasonableness of the demands, or the *merits of the dispute,* have no place in the determination of the question whether a labor dispute exists."

This court is aware of the sanctity of contract and does not intend to disturb its

utility to our society, but the unemployment compensation act is not designed to be used as an instrument with which to force compliance with other legal precepts. This principle is illustrated by the following cases which hold that an industrial controversy is not prevented from being a labor dispute just because one of the parties may be breaching a contract. In Burleson v. Unemployment Compensation Board of Review, 173 Pa.Super. 527, 98 A.2d 762, 764, the question was raised whether or not a local steel workers union was bound by a contract made by the national organization. In this regard the court said:

"However, that question is not before us and we express no opinion upon it. The Board's findings and the contentions relating to the effect of the November 17th contract are completely irrelevant in this context. Whether or not the basic agreement remained in force, the work stoppage nevertheless resulted from a labor dispute. If the basic agreement and the wages therein stipulated were binding upon the Local, its strike was a violation of the agreement. * * *

"As stated, there can be no doubt that the work stoppage resulted from a labor dispute."

When the California Employment Commission held striking longshoremen eligible for unemployment compensation because the strike was provoked by their employer's breach of their collective bargaining agreement, the California Supreme Court stated:

"It is not the function of the commission to evaluate the merits of a controversy between an employer and his employees; if a trade dispute exists and the employee leaves his work because of it, he may not receive benefits even though his employer is in the wrong. * * * nor was it intended that the commission should become an arbitrator of industrial disputes. The commission therefore exceeded its powers when it determined the merits of the dispute in the present case and awarded benefits or credit for the

weeks of waiting period on the basis of that determination." W. R. Grace & Co. v. California Employment Commission, 24 Cal.2d 720, 151 P.2d 215, 221.

In Armory Worsted Mills, Inc., v. Riley, 96 N.H. 162, 71 A.2d 788, 790, the following appears:

"It is agreed that there was a stoppage of work at the factories of both the appellant companies. In each case it was because of a labor dispute. This dispute concerned the right of the employer to use non-union supervisory persons on maintenance jobs contrary to the agreements. * * * The disputes under consideration involved working conditions and terms of employment. *For the purpose of determining the existence of the disputes, their merits are immaterial.*"

In Byerly v. Unemployment Compensation Board of Review, 171 Pa.Super. 303, 90 A.2d 322, 326, the court stated:

"In our judgment, even when viewed most favorably to claimants, the employer's action can be held to be no more than the violation of contract claimants contend it was. Whether the employer was justified is of no moment. The salient fact is that the workers walked off the job because of a labor dispute rooted in an alleged breach of contract. * * * It is a case where employés have sought redress of an alleged contract violation by a concerted work stoppage. But contract violations are redressible in assumpsit and not by the award of benefits out of the State's Unemployment Compensation Fund."

█ Thus, in our view, a fair construction of subsections A and B, supra, would be that if employees are disqualified for benefits under subsec. A when their unemployment was directly due to a labor dispute, regardless of whether they were right or wrong in the controversy, subsec. B, in fairness, could not be construed to mean that they left their work voluntarily when forced out of work by a labor dispute. And according to the facts set out in the opinion of the Court of Appeals, there was a "labor dispute" in the instant case.

But, as pointed out earlier, petitioner contends that even if there was a labor dispute within the meaning of subsec. A of § 214, the claimants still should be disqualified, for they struck in violation of their contract and this constituted a voluntary leaving of their employment "without good cause" as set out in subsec. B. So although the courts have persistently refused to consider the merits of a labor controversy under provisions such as our subsec. A, petitioner now seeks to have us do it under subsec. B. There would seem to be no basis for the "regardless of merit" interpretation of subsec. A if by virtue of subsec. B a worker was to be disqualified anyway every time he was "wrong." Under subsec. A the claimant is disqualified so long as the dispute continues even if the employer is "wrong." Yet petitioner asks us to hold that under subsec. B the worker is disqualified after the dispute is settled if he was in error in the dispute. So construed, the disabilities imposed by subsec. B would then be a penalty against the worker for being wrong but no corresponding sanction would be imposed on the erring employer. We do not think the Alabama Unemployment Compensation law affords a basis for such result.

█ When a person goes or is forced out on a strike because of a labor dispute, he has not "left his employment" within the meaning of subsec. B. It is well settled that such a strike does not sever the employer-employee relationship. National Labor Relations Board v. Mackay Radio and Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L. Ed. 1381; Jeffery-De Witt Insulator Co. v. National Labor Relations Board, 4 Cir., 91 F.2d 134, 112 A.L.R. 948, certiorari denied, 302 U.S. 731, 58 S.Ct. 55, 82 L.Ed. 565; Tri-City Central Trades Council v. American Steel Foundries, 7 Cir., 238 F. 728; Iron Moulders' Union v. Allis-Chalmers Co., 7 Cir., 166 F. 45, 52, 20 L.R.A.,N.S., 315; Fryns v. Fair Lawn Fur Dressing Co., 114 N.J.Eq. 462, 168 A. 862. This rule has been applied to unemployment compensation cas-

es. Mark Hopkins, Inc., v. California Employment Commission, 24 Cal.2d 744, 151 P. 2d 229, 154 A.L.R. 1081; Sandoval v. Industrial Commission, 110 Colo. 108, 130 P. 2d 930; Great A. &. P. Tea Co. v. New Jersey Dept. of Labor & Industry, 29 N.J.Super. 26, 101 A.2d 573. We think, therefore, the disqualification found in subsec. B contemplates a complete severance of employer-employee relations rather than its mere temporary suspension due to a strike. This alone is sufficient basis for our decision, but to satisfy urgent appeal of counsel additional authority will be considered.

We note that subsec. A provides that the disqualification contained therein is to continue so long as the labor dispute is in active progress in the establishment. The conclusion seems necessarily to follow that when the dispute is settled the disqualification ceases. It thus appears that it contains all of the disabilities that the legislature intended to impose because of a labor dispute. Subsec. B then appears to be without the influence of the conditions of disqualification set out in subsec. A and stipulates for disqualification under other and different conditions. Such seems to be the explicit holding of the Michigan case of Intertown Corp. v. Appeal Board of Michigan Unemployment Compensation Commission, 328 Mich. 363, 43 N.W.2d 888, 890. There the court stated:

"The only question, therefore, is whether claimants left work voluntarily without good cause attributable to the employer. * * *

"In maintaining its neutral position in employer-employee relations, the State has established statutory bases of disqualification for unemployment benefits. The disqualifications of subsection (a) are for the duration of unemployment, and this includes the voluntary leaving of work by the employee. The following subsection (b) disqualifies the employee for those weeks of his unemployment which are due to stoppage of work because of a labor dispute in which he is directly involved. This specific provision in regard to the labor dispute disqualification indicates that such should not be within the reach of the 'voluntary leaving' of § 29 (1)(a)(1). * * *

"This Court need not characterize the 'fault' in the strike. Unemployment compensation does not depend upon the merits of a labor dispute."

The California case of Bunny's Waffle Shop v. California Employment Commission, 24 Cal.2d 735, 151 P.2d 224, 228, involved a dispute between restaurant and union members as to whether or not negotiations should be conducted on a city-wide basis. In order for the owners to force the workers to accept their point of view a twenty-five percent wage reduction and other sanction were imposed. There had been an administrative finding of fact that the workers had left their work because of the wage reduction and not because of the labor dispute. In determining whether or not the workers were eligible for benefits, the court made the following statement:

"Had claimants in the present case left their work because of the trade dispute, the merits of the controversy would be immaterial and there would be no occasion to inquire whether they had good cause for leaving."

We have also resorted to the Commerce Clearing House publications on unemployment compensation in our study of the case and find the following statements in regard to administrative decisions of three states:

Missouri—"It was also held that the voluntary separation proviso of the law cannot be applied to labor disputes cases since 'The legislature had no intent for the Division to undertake to judge the merits of a labor dispute,' * * *." D.E.S. Release, Jan. 18, 1950; 5 CCH Unemployment Compensation, Par. 1980.27.

Minnesota—"A claimant went on strike which was not held in compliance with the State Labor Relations Act. The claimant was, of course, disqualified for loss of employment due to a labor dispute. However, she was not disqualified for voluntarily leaving as

well, because 'the claimant and her associates had the right to follow the directions of her union. * * * she could not be penalized by denying her benefits because the union made a mistake in the interpretation of the law.' " Appeal Tribunal Decision. App.No. 1509, 5–31–40; 5 CCH Unemployment Compensation, Par. 1975.27.

Connecticut—"In disposing of the issue of whether the strikers left work without sufficient cause, it was pointed out that one who goes on strike does not sever the employer-employee relationship. Should it be assumed that a person on strike left voluntarily, however, such voluntary separation would be with sufficient cause 'because a strike is a weapon by which labor has been struggling for years to bring itself from its former poor condition to its present place in the country's industrial system and that weapon is recognized as proper and legal." Comm. Dec. No. 118–B–39 (UCD Bull., Dec., 1939); 2 CCH Unemployment Compensation, Par. 1975.83.

It results from these considerations that the judgment of the Court of Appeals affirming the award below was proper.

Writ denied.

LIVINGSTON, C. J., and LAWSON, STAKELY, MERRILL and CLAYTON, JJ., concur.

GOODWYN, J., concurs in result.

GOODWYN, Justice (concurring specially).

As I understand the opinion, it makes no difference whether there is a valid working agreement or not; that if the leaving of employment is in connection with a "labor dispute", a finding of such fact is alone sufficient to constitute "good cause" for leaving, irrespective of any other consideration. With this I cannot agree. I find no basis in the statute for holding that the legislature intended that a leaving in violation of a valid agreement not to leave, for instance, a contract containing a "no-strike" provision, should be considered a leaving "with good cause". To so hold imputes to the legislature, it seems to me, an intent to invite, or at least condone, contract violation. I fail to see anything in the statute justifying that imputation.

Subsection B of Sec. 214, Tit. 26, Code 1940, as amended, provides that an individual shall be disqualified for benefits "if he has left his employment voluntarily without good cause connected with such work." In determining whether benefits are due under this subsection, a factual finding necessarily must be made in each instance as to whether the leaving was with or without good cause. Is there good reason why it would not be proper and administratively practicable, in passing on eligibility for benefits, to determine whether a leaving is in violation of a contract? As I see it, there is no fundamental difference in determining eligibility under those circumstances and in determining eligibility when other circumstances are involved.

The Court of Appeals made a factual finding that there was a waiver of the working agreement. On certiorari we do not review such findings of fact. My concurrence in denial of the writ is based on said finding of fact by the Court of Appeals.