**Kenneth A. SWIECICKI, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY. Industrial Commission of Utah; United States Department of Transportation, Federal Aviation Administration, Defendants.**

**No. 18315.**

Supreme Court of Utah.

June 29, 1983.

---

John S. Chindlund, Salt Lake City, for plaintiff.

David L. Wilkinson, Floyd G. Astin, K. Allan Zabel, Salt Lake City, for defendants.

STEWART, Justice:

Plaintiff Kenneth A. Swiecicki appeals a denial of unemployment benefits by the Board of Review of the Industrial Commission of Utah. He argues that the Board erred in finding that he voluntarily quit his job when he failed to report to work during

a nation-wide air traffic controllers' strike in 1981. We affirm.

Plaintiff was hired as an air traffic controller in 1974, and was a member of the Professional Air Traffic Controllers Association (PATCO), the union that called the nation-wide strike. At the time of the strike, he worked at the Salt Lake International Airport control tower.

Plaintiff participated in the strike by failing to report to work on August 3, 4, and 5, 1981. During that period, President Reagan ordered the striking controllers to return to work by their next regularly scheduled shift following 11:00 a.m., August 5 or "their jobs would be forfeited." Plaintiff's next regular shift was 8:00 a.m., August 6. Although plaintiff called in twice that morning, and expressed an interest in returning to work before the deadline, he did not return to the control tower until 11:30 that night. He was subsequently discharged.

At the appeals hearing, plaintiff contended that the reason he did not return to work immediately was that he was so mentally distressed by the strike and by thoughts of having to cross the picket lines that he was too ill to go to work. He testified that on August 8, two days after the deadline, he was treated by a physician for extreme anxiety and nervousness caused by the strike. Plaintiff also contended that he did not return to work because he feared violence and injury if he crossed the picket line.

The appeals referee denied unemployment benefits pursuant to U.C.A., 1953, § 35–4–5(d), participation in a strike, and § 35–4–5(a), leaving work "voluntarily without good cause." The referee found that the record did not support plaintiff's contention that he was ill or otherwise unable to work at the time of the strike.

On this appeal plaintiff challenges only the denial of benefits under § 35–4–5(a) because the disqualification for benefits under § 35–4–5(d) is only for the duration of a strike.[1] He first argues that § 35–4–5(a) does not apply because, in reality, he did not voluntarily quit but was involuntarily terminated.

We note at the outset that "[u]nemployment compensation is legislatively created to ameliorate the hardship of those who, through no fault of their own, find themselves unemployed. It was not created to enhance the staying power of employees engaged in labor warfare . . . ." *Daniel v. Industrial Commission,* Utah, 617 P.2d 381, 387 (1980).

■ In interpreting unemployment compensation statutes, special considerations must be given to the circumstances surrounding the failure of employees to work because of strikes and lockouts. *See generally* Annot., *Comment Note—General Principles Pertaining to Statutory Disqualification for Unemployment Compensation Benefits Because of Strike or Labor Dispute,* 63 A.L.R.3d 88 (1975), and related annotations cited therein. In cases of ordinary strikes, a majority of courts have held that a striking employee cannot be disqualified from unemployment compensation benefits as a

---

1. Section 35–4–5(a) provides:

34–4–5. Ineligibility for benefits. An individual shall be ineligible for benefits or for purposes of establishing a waiting period: Voluntarily Leaving Work.

(a) For the week in which the claimant left work voluntarily without good cause, if so found by the Commission, and for each week thereafter until the claimant has performed services in bona fide covered employment and earned wages for such services equal to at least six times the claimant's weekly benefit amount; provided, that no claimant shall be ineligible for benefits if the claimant leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification.

The commission shall in cooperation with the employer consider for the purposes of this act, the reasonableness of the claimant's actions, and the extent to which the actions evidence a genuine continuing attachment to the labor market in reaching a determination of whether the ineligibility of a claimant is contrary to equity and good conscience.

Thus, § 35–4–5(a) denies benefits for each week after the voluntary quit until claimant has found a new job and earned six times his previous weekly wages. Section 35–4–5(d), on the other hand, denies benefits only for the period during which the strike occurred.

"voluntary quit," although he can be disqualified for the period of the strike by a statutory provision dealing specifically with strikes. *E.g., Inter-Island Resorts, Ltd. v. Akahane,* 46 Hawaii 140, 156–60, 377 P.2d 715, 724–26 (1962); *T.R. Miller Mill Co. v. Johns,* 261 Ala. 615, 75 So.2d 675 (1954); *Intertown Corp. v. Appeal Board,* 328 Mich. 363, 43 N.W.2d 888 (1950).

■ Under the facts of this case, however, the Commission held, and we agree, that plaintiff did voluntarily quit work. Strikes are ordinarily permitted by law, and do not sever the employer-employee relationship. *E.g., T.R. Miller Mill Co. v. Johns, supra. See also* Annot., 63 A.L.R.3d 88, *supra,* § 7[d]. However, in this case, plaintiff was a government employee who was prohibited by law from striking. 5 U.S.C. § 7311 (1976); 18 U.S.C. § 1918 (1976). Plaintiff was informed of a presidential order (the validity of which he does not challenge) to return to work or be terminated. His decision in failing to report to work was thus tantamount to a voluntary quit.

■ Plaintiff argues that even if it be conceded that he had voluntarily quit within the meaning of § 35–4–5(a), he nonetheless had "good cause" for doing so. He asserts that on August 5 he was too emotionally ill to report to work. The Commission's findings of fact on this issue are determinative if supported by substantial evidence. U.C.A., 1953, § 35–4–10(i); *Salt Lake City Corp. v. Department of Employment Security,* Utah, 657 P.2d 1312 (1982).

The Commission found that plaintiff had failed to prove that he was ill on August 5. Plaintiff's medical treatment for nervousness did not occur until three days later, August 8. When plaintiff failed to report on August 5, he telephoned in, but did not mention being sick from anxiety, nervous disorders, or any other health-related reason for not reporting to work. His statement was simply, "I cannot do something like that [i.e., come to work] at this time."

It may be that plaintiff was torn by indecision as to whether to cross the picket lines. The information he received from the Government, on the one hand, and from PATCO, on the other, regarding the effect of returning to work was in direct conflict. However, even in the face of conflicting information, a choice is possible. As the Board pointed out, "[plaintiff's] indecision was in effect a decision not to report to work as ordered." Under the facts of this case plaintiff's indecision in itself was not a basis for the "good cause" exception to § 35–4–5(a). In sum, the Commission's finding was adequately supported.

■ Plaintiff also argues that if he does not qualify for benefits under the "good cause" exception to § 35–4–5(a), the Board should have granted benefits under the "equity and good conscience" provision of that section.[2] We have previously stated that that provision indicates a legislative intention to commit broad discretion to the Commission, and that we will not reverse decisions under that provision "unless the Commission has plainly abused its discretion." *Salt Lake City Corp. v. Board of Review,* Utah, 657 P.2d 1312, 1316 (1982). In the present case there is nothing that persuades us that the Board abused its discretion by not invoking the "equity and good conscience" provision.

We also note plaintiff's contention, not discussed in the decisions of the Board or appeals referee, that he feared violence and injury if he crossed the picket line. At the hearing the evidence was in dispute as to whether plaintiff would have been required to cross picket lines to reach the control tower. However, no evidence was offered by plaintiff to show that violence had actually erupted when union members tried to cross the line.

■ The general rule is that for purposes of determining eligibility for unemployment compensation benefits, mere verbal threats of picketing strikers are not sufficient to justify a nonstriking claimant's refusal or failure to cross the picket line to report for work. *See, e.g., Meyer v. Industrial Commission,* 240 Mo.App. 1022, 223 S.W.2d 835

2. See the text of § 35–4–5(a) in note 1, *supra.*

(1949). *See also* Annot., *Refusal of Non-striking Employee to Cross Picket Line As Justifying Denial of Unemployment Compensation Benefits,* 62 A.L.R.3d 380, § 4[b] (1975), and cases cited therein. We think that rule applies to this case. Even if there were verbal threats, that was not sufficient to establish good cause.

Affirmed.

HALL, C.J., OAKS, J., and DOUGLAS L. CORNABY, District Judge, concur.

HOWE, Justice (concurring and dissenting):

I concur in the holding of the Court that the plaintiff does not qualify for benefits under the "good cause" exception to § 35–4–5(a), but I dissent from the holding that he does not qualify under the "equity and good conscience" exception of that subsection. The latter exception provides that the claimant shall not be ineligible for benefits if he "leaves work under circumstances of such a nature that it would be contrary to equity and good conscience to impose a disqualification." That subsection directs the employer to consider the "reasonableness of the claimant's actions and the extent to which the actions evidence a genuine continuing attachment to the labor market." I cannot envision a situation where a claimant would come closer to meeting those requirements than under the fact situation of the present case.

The claimant here was obviously caught and torn between two loyalties. He was a member of PATCO which called a nationwide strike. With that membership comes the obligation of allegiance and loyalty to the elected leaders. On the other hand, the President of the United States had ordered the striking controllers to return to work. No loyal and conscientious citizen would feel good about ignoring such an order. The claimant was obviously distressed and torn about what course of action he should follow. He called in twice the morning of August 6 and expressed an interest in returning to work. He expressed qualms about crossing the picket line of his co-workers.

While I am mindful that the Commission has broad latitude under the "equity and good conscience" exception, I do not think that the claimant's actions can be viewed otherwise than being reasonable under all circumstances. In my view, the "equity and good conscience" exception is much broader than the exception for leaving work voluntarily for "good cause." I believe that the "equity and good conscience" provision was meant to cover situations just as we have here. No one questions the genuine attachment of this claimant to the labor market. A claimant caught up in the strife that the claimant here was subjected to should not be denied the beneficence of the statute.

DURHAM, J., does not participate herein. DOUGLAS L. CORNABY, District Judge, sat.