**Donald LANIER, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, Defendant.**

**No. 19862.**

Supreme Court of Utah.

Jan. 11, 1985.

---

Carolyn L. Driscoll, Salt Lake City, for plaintiff.

K. Allan Zabel, Linda Wheat Gowaty, Salt Lake City, for defendant.

HALL, Chief Justice.

Plaintiff Donald Lanier appeals from a decision of the Board of Review of the Industrial Commission denying him unemployment benefits because he left work voluntarily without good cause.[1]

---

**1.** U.C.A., 1953, § 35–4–5(a).

Plaintiff was employed in the housekeeping department of the University of Utah Hospital. On four consecutive days in June 1983, he was absent from work because his arm was in pain from an old injury. Hospital policy required employees to personally notify the hospital each day they were unable to report to work.[2] Under the policy, absence for three consecutive days without notification was considered just cause for termination of employment without notice. Plaintiff was aware of this policy.

On plaintiff's first day of absence, his daughter telephoned the hospital and reported that he was ill. Plaintiff did not contact the hospital, either personally or through another person, on either of the next two days. Plaintiff testified that on his fourth day of absence, his daughter again called the hospital and reported him ill. Plaintiff's daughter stated by affidavit that she had "called in sick" for her father but did not specify the dates on which she had called. Plaintiff's supervisor, however, testified she had received no call from plaintiff's daughter on the fourth day, although a secretary might have taken such a call. After the hearing, a written statement by the housekeeping personnel was submitted stating no one had received a call from plaintiff's daughter on the fourth day. The board adopted the finding of the administrative law judge that plaintiff's daughter did not call the hospital that day.

Minnie Brown, a co-worker of plaintiff whom he regularly drove to work, testified that on one of the days on which plaintiff was absent, plaintiff's daughter called Brown and told her plaintiff had quit work. Brown also testified that plaintiff drove her to work the next day (also one of the days on which plaintiff was absent) and told her himself that he had quit. Brown stated plaintiff told her he quit because he could not mow yards and work at the hospital too. Brown's testimony was partially controverted by an affidavit of plaintiff's daughter stating she had told Brown plaintiff had been fired. Plaintiff admitted driving Brown to work and helping his son mow lawns but stated that mowing the lawns did not interfere with his job. The board adopted the finding of the administrative law judge that both plaintiff and his daughter told Brown plaintiff had quit.

On plaintiff's fourth consecutive day of absence (his third consecutive day without notification), the hospital issued a notice of termination of plaintiff's employment. Plaintiff did not contest the termination through hospital grievance procedures, with which he was acquainted.

On this and previous occasions, plaintiff's supervisor did not object to plaintiff's failure to personally report his absence. Plaintiff asserts that this acquiescence estops the hospital from basing its termination of plaintiff's employment on his violation of hospital policy. This argument is unavailing. First, the hospital did not claim that it discharged plaintiff. It claimed, and the commission found, that plaintiff voluntarily left his job. Second, the determination that plaintiff voluntarily left work was not based on plaintiff's failure to personally report his absence. The decision was based on, among other factors, plaintiff's failure to contact his employer at all, either personally or through someone else, for three consecutive days. There was no evidence that the hospital had previously acquiesced in plaintiff's failure to report his absence at all. One could not reasonably presume from the hospital's acceptance of the reporting of plaintiff's absences through other persons that plaintiff's failure to report his absences at all, either personally or through another, would also be accepted. Therefore, equitable estoppel does not apply.

---

**2.** Plaintiff asserts no competent evidence was adduced below that hospital policy required notification on each day of absence. An exhibit of record consists of an excerpt from the hospital employee manual stating, "You will be expected to report to work promptly each day. When this is not possible, the department must be notified as soon as practical *before* the shift begins, but no later than two hours after the start of the shift."

Plaintiff next contends he did not leave work voluntarily but rather was discharged because the hospital thought he had violated its policy on reporting absences. He further contends the discharge was not justified, and he is entitled to unemployment benefits.[3] We disagree with the first contention and, therefore, do not reach the latter.

■■ The burden of proof in unemployment compensation proceedings is on the claimant to establish eligibility for benefits.[4] In the context of this case, this burden required plaintiff to show he did not leave work voluntarily. In previously construing section 35–4–5(a), we have stated that " 'voluntarily' simply means at the volition of the employee, in contrast to a firing or other termination at the behest of the employer." [5] Whether an employee left work at his own volition or at that of the employer is a question of fact. In reviewing decisions of the commission in unemployment compensation proceedings, we are to affirm factual determinations if they are supported by substantial evidence.[6] There is substantial evidence on the record in this case to support the board's finding that plaintiff left work voluntarily, that is, at his own volition.

■■ First, the finding that plaintiff's daughter did not call the hospital for plaintiff on his fourth day of absence is adequately supported by the testimony of plaintiff's supervisor and the affidavit of other housekeeping personnel that no call was received. This finding, taken with other uncontroverted facts, establishes that plaintiff failed to contact the hospital for three consecutive working days. An employee's intent to keep his job may reasonably be questioned based on this conduct alone.

In addition, however, plaintiff knew he could be fired for such conduct. Not only did hospital policy require daily notification of absence, but it expressly provided for automatic discharge for absence without notification for three consecutive days. Plaintiff's willful noncompliance with this known policy further evidences an intent to terminate his employment.

The finding that both plaintiff and his daughter told Brown that plaintiff had quit his job is well founded on Brown's testimony. These statements strongly reinforce the inference that plaintiff intended to quit. Similarly, that plaintiff worked mowing lawns and that he failed to protest his termination through hospital grievance procedures with which he was familiar corroborate that plaintiff had such an intent. These facts, taken as a whole, constitute substantial evidence that plaintiff voluntarily left his employment.

Plaintiff's conduct here is analogous to that of the plaintiff in *Swiecicki v. Department of Employment Security*, [7] in which we held that the failure of an air traffic controller to return to work from an illegal nationwide strike of his union, in defiance of a presidential order to return to work or be terminated, was "tantamount to a voluntary quit." [8] Both the conduct of plaintiff here and that of the employee in *Swiecicki* evidenced an intent to quit the employment.

---

3. U.C.A., 1953, § 35–4–5(b)(1) provided at the time of the termination of plaintiff's employment, "An individual is ineligible for benefits or for purposes of establishing a waiting period . . . [if he or she] was discharged for an act or omission in connection with employment, not constituting a crime, which is deliberate, willful, or wanton and adverse to the employer's rightful interest. . . ."

4. *Baker v. Department of Employment Sec.,* Utah, 564 P.2d 1126, 1127 (1977).

5. *Chandler v. Department of Employment Sec.,* Utah, 678 P.2d 315, 320 (1984).

6. U.C.A., 1953, § 35–4–10(i); *Kearl v. Department of Employment Sec.,* Utah, 676 P.2d 385, 387 (1983).

7. Utah, 667 P.2d 28 (1983).

8. *Id.* at 31.

■ Plaintiff's final contention is that equity and good conscience justify awarding him benefits despite his voluntary leaving.[9] Because this issue is raised for the first time on appeal, we decline to consider it.

Affirmed.

9. U.C.A., 1953, § 35–4–5(a).

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, J., concurs in the result.