James GREEN, Plaintiff,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.

No. 20861.

Supreme Court of Utah.

Nov. 5, 1986.

Steven H. Lybbert, Salt Lake City, for plaintiff.

K. Allan Zabel, Lorin R. Blauer, Salt Lake City, for defendant.

HOWE, Justice:

Plaintiff James Green seeks review of a decision of the Board of Review denying him unemployment benefits because he voluntarily left work.

Plaintiff was employed as a bus driver for Utah Transit Authority (UTA) for approximately six years. On January 14, 1984, he was involved in a minor accident while driving his bus on an icy road. Just short of one year later, he was involved in two minor accidents on January 8, 1985, while driving under similar conditions.

The policy of UTA is to have the driver and a road supervisor submit reports on every accident. The reports are evaluated by an accident review committee that classifies the accident as minimal, minor, major, or extensive and determines whether or not it could have been prevented by the driver. Three minor preventable accidents in a twelve-month period make a driver subject to dismissal. UTA then has the option to terminate the employee or have him sign a behavorial commitment.

The two accidents on January 8, 1985, gave plaintiff three minor preventable accidents within a twelve-month period and placed him in jeopardy of termination. UTA elected not to terminate but rather to give him the option of signing a behavioral commitment. On February 20th, plaintiff met with the UTA operations manager. He was asked if he would commit not to have "any more accidents." Considering the many factors that were beyond his control, such as adverse weather, the condition of the bus, other drivers etc., plaintiff replied that he did not feel he could make such a commitment. When he asked for a further explanation of the commitment, he was told simply "a commitment that you don't have an accident in the next twelve months." Plaintiff again replied that he could not make such a commitment. When asked if this meant he was resigning, he replied, "no." He was then told he was fired and received written notice of his termination later that day.

Plaintiff was granted unemployment benefits on the ground that his discharge was for nondisqualifying reasons. UTA appealed this decision to an administrative law judge who reversed and ruled that plaintiff was discharged for "just cause." He was then denied benefits and assessed an overpayment of $740. Plaintiff appealed and the Board of Review modified the finding of the administrative law judge to hold that plaintiff should be denied benefits pursuant to U.C.A., 1953, § 35–4–5(a) because he "left work voluntarily." Plaintiff comes before this Court on a writ of review.

This Court has interpreted "voluntary" as it is used in the statute in question to mean "at the volition of the employee, in contrast to a firing or other termination at the behest of the employer." *Lanier v. Industrial Commission of Utah,* 694 P.2d 625 (Utah 1985). In the instant case, plaintiff was unequivocally told "you're fired" and was given written notice to that effect. UTA maintains since he was given a choice to make a behavioral commitment or be terminated, his refusal to make a commitment was a voluntary choice to leave work. We do not agree. The disqualification from receiving benefits is dependent upon the fact of voluntary action by the claimant; the determinative factor is the volition of the employee. *Id.* at 628. *Mills v. Gronning,* 581 P.2d 1334, 1337 (Utah 1978). Even though the employee is given a "choice," if that choice is not freely made, but is compelled by the employer, that is not an exercise of volition that would disqualify the employee from benefits. *Id.* at 1338.

The facts do not support the proposition that plaintiff voluntarily left work. The commitment that he was asked to make was "not to have any more accidents for one year." His following testimony shows that he took that statement at face value, that is, that "any more accidents" included accidents over which he had no control, such as accidents on icy roads or where another driver was at fault.

> Judge: Did you understand that a person, instead of being fired, you could have made a commitment and you wouldn't have been fired?
>
> Claimant: Right. Yea. Why I didn't make a commitment—I don't see you know how a person could make a commitment that he'll never have another accident traveling on ice and so, that was my reason for not making a commitment. . . .
>
> Judge: Did you ask for an explanation?
>
> Claimant: Yea, I explained to him and I so I said, "What kind of a commitment?" And he said, "A commitment that you don't have an accident in the next twelve months." And so, that's what I said and

I said, "I cannot do that." Then he said, "You're fired."

The "choice" as it was presented to the plaintiff was to make a commitment that he in good conscience felt he could not keep or face immediate termination. His failure to sign the commitment under these circumstances was not a voluntary choice to quit work. He specifically denied that it was, in effect, a resignation. His termination was at the behest of UTA and was not an exercise of his volition.

UTA further contends that even if plaintiff was terminated, it was for "just cause" and that this Court should reinstate the finding of the administrative law judge that plaintiff is ineligible for benefits under U.C.A., 1953, § 35-4-5(b)(1).

In order to terminate for "just cause," it should be shown that the employee had clear knowledge of what the employer expected of him in connection with his work, that the complained of action or behavior was within the employee's control, and that the employee had demonstrated some culpability on his part. *Logan Regional Hospital v. Board of Review of the Industrial Commission,* 723 P.2d 427 (Utah 1986); *Kehl v. Board of Review of Industrial Commission,* 700 P.2d 1129 (Utah 1985); *Clearfield City v. Department of Employment Security,* 663 P.2d 440 (Utah 1983). The refusal of the plaintiff to sign a behavioral commitment did not constitute "just cause" due to his lack of knowledge. Knowledge may not be established unless the employer gave a clear explanation of the expected behavior.

According to the uncontroverted testimony of the plaintiff, he was asked to make a written commitment "not to have any more accidents." UTA concedes that the request made of him may have been so worded, but in light of his years with UTA and his knowledge of its policy regarding accidents, he should have known that UTA meant "preventable accidents." That argument supports the conclusion that the request was indeed ambiguous. Significantly, no commitment was ever prepared for him to read and sign. He was not shown a

sample commitment or given any opportunity to evaluate the specific terms of a proposed commitment. At the administrative hearing, UTA's representative testified that there was no standard form for the commitment, but that it basically says, "I commit to the authority that over the next time period, I will not have anymore accidents...."

■ It thus appears that the request made of the plaintiff was unclear. He understood it to mean one thing; UTA apparently had another meaning in mind. Without knowledge of what he was requested to commit, plaintiff's refusal to make what he thought was, and which would have been, an unreasonable commitment did not constitute "just cause" for termination within the meaning of our statute.

We hold that plaintiff did not leave work voluntarily, nor was he terminated for "just cause." The order declaring him ineligible for unemployment benefits is reversed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.