588 A.2d 396

EASTERN AIR LINES, INC., PLAINTIFF–APPELLANT/CROSS–RE-SPONDENT, v. STATE OF NEW JERSEY, DEPARTMENT OF LABOR BOARD OF REVIEW, JUDY T. PETZOLDT AND 218 OTHER RESPONDENTS LISTED ON SCHEDULE A, DEFEN-DANTS–RESPONDENTS/CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 13, 1991—Decided March 11, 1991.

---

524

Before Judges PRESSLER, DEIGHAN and ARNOLD M. STEIN.

*Maurice J. Baumgarten* admitted *pro hac vice* argued the cause for appellant/cross-respondent (*Maurice J. Baumgarten* and *Jo Ann Burk* of *Cuyler, Burk & Matthews,* attorneys; *Maurice J. Baumgarten* and *Jo Ann Burk* on the brief and reply brief).

*Mark Richard* admitted *pro hac vice* argued the cause for respondents/cross-appellants *Judy T. Petzoldt* and 218 other respondents (*Mark Richard* and *Jesse Strauss* of *Reitman, Parsonnet & Duggan,* attorneys; Messrs. *Mark Richard* and *Jesse Strauss* on the brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent/cross-appellant Board of Review (*Ellen A. Reichart,* Deputy Attorney General, submitted a Statement In Lieu of Brief on behalf of Board of Review).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

This unemployment compensation case involves the claims of 218 Newark-based flight attendants employed by respondent Eastern Airlines, Inc., who stopped work on March 4, 1989. Their initial individual claims were denied pursuant to *N.J.S.A.* 43:21–5(d), which disqualifies an employee whose unemployment is due to a work stoppage caused by a labor dispute which the employee finances, participates in or is directly interested in. On appeal to the Appeal Tribunal, the Appeals Examiner, following a hearing, concluded that the claimants were disqualified from receiving benefits for that reason for the period from March 4, 1989, to July 2, 1989. She also, however, concluded that they were entitled to benefits for all periods of unemployment thereafter since as of the July date, the cause of their unemployment was not the labor dispute but the unavailability of work resulting from Eastern's closing of the Newark base.

The Board of Review affirmed the decision of the Appeal Tribunal, and Eastern and the claimants respectively appealed and cross appealed. Eastern contends that the entire period of unemployment was due to the labor dispute. Claimants contend that the unavailability of work cause had superseded the labor dispute cause even prior to the July date. We affirm the administrative decision in its entirety based on the factual findings and conclusions of law of the agencies.

The essential facts were largely stipulated. The Newark-based flight attendants are members of Local 533 of the Transport Workers Union of America, AFL–CIO (TWU). The lawful strike against Eastern which started on March 4, 1989, had initially been called by the International Association of Machinists (IAM). Prior to that date, the Air Lines Pilots Association (ALPA) and TWU had adopted resolutions supporting the machinists in their labor dispute with Eastern and calling upon their respective members to honor the IAM picket lines and withhold their own labor in the event IAM went on strike. Most, including these claimants, did so. Although Eastern had advised its employees prior to the strike that it intended to continue operations in the event of a strike, it in fact flew no flights out of Newark between March 4, 1989, and June 9, 1989, when three daily flights, as opposed to the pre-strike 18–flight daily schedule, began departing from Newark. Eastern had also advised its Newark-based flight attendants that if they would cross the picket lines, work would be provided for them at other bases. This message was reiterated in a mailgram sent by Eastern to its Newark-based flight attendants on March 6, 1989. The mailgram explained the mechanics of the preferential recall list Eastern was maintaining for non-striking attendants. It also advised the attendants that not only had Eastern's current schedule been reduced to 25% of its pre-strike operations but that a return to pre-strike levels was "problematic." Apparently some flight attendants did return to work and were employed. There was obviously, however, no Newark-based work for many weeks.

Several days after the strike began, Eastern filed for reorganization under Chapter 11 of the Federal Bankruptcy Code, 11 *U.S.C.A.* § 1101 *et seq.* (1979). Its plan, filed on April 24, 1989, was predicated on a substantial operational reduction. In evident implementation of its plan, Eastern wrote to all its Newark and Boston-based striking flight attendants on May 1, 1989, notifying them that as of July 2, 1989, the flight attendant crew bases at Newark and Logan Airports would be permanently closed "due to a reduction in operations." The striking attendants were also then advised of their opportunity to protect their jobs by signing a preferential recall list for work at another base to be assigned by the employer. These claimants did not avail themselves of that opportunity.

■ Based on the foregoing facts, the Appeals Examiner found that on March 4, 1989, "... there was a total stoppage of work at the employer's Newark base of operations and that that stoppage was due to a labor dispute." We are satisfied that claimants do not seriously contest either this finding or the disqualification result which necessarily follows therefrom pursuant to *N.J.S.A.* 43:21–5(d). In any event, we reject the suggestion that at some point prior to the July Newark Airport closing, the claimants were unemployed because of lack of work. The fact is that none of them attempted to work by crossing the picket lines at the Newark base and other striking attendants who did cross the lines were given work. *See, e.g., Burgoon v. State Bd. of Review,* 100 *N.J.Super.* 569, 579, 242 *A.*2d 847 (App.Div.1968), *certif. denied,* 52 *N.J.* 168, 244 *A.*2d 299 (1968).

■ The primary dispute between the parties, as we understand it, is whether this labor-dispute characterization was, as the Appeals Examiner further found, altered by the announced July closing of the Newark base. The Examiner's finding, as corrected by the Board of Review, was that "The employer's decision to abandon the Newark base was part of the reorganization plan submitted to the Bankruptcy Court which means

there is no work available to the flight attendants at the premises where they were last employed." We are satisfied that this finding is not only supported by the record, *R.* 2:11–3(e)(1)(D), but that, as a matter of law, it supports the conclusion that as of the date of the base closing, claimants' unemployment was no longer due to a disqualifying labor dispute.

In applying the labor-dispute disqualification provision of the statute, our courts have drawn the distinction between a temporary unavailability of work caused by a labor dispute and a permanent withdrawal by the employer of jobs involved in the labor dispute. Thus, if there remains a job to return to after the labor dispute has been resolved and the work stoppage ends, the unemployment during the period of the work stoppage is directly attributable to the labor dispute. The actual existence of the job during that period is, moreover, irrelevant. If, however, the resolution of the labor dispute will not result in the availability of the job because during the dispute the employer took action to eliminate the job permanently, then, as of the date of the elimination, the unemployment is deemed to result from unavailability of work rather than from the labor dispute. *Compare Great A. & P. Tea Co. v. Division of Unemployment Compensation,* 29 *N.J.Super.* 26, 101 *A.*2d 573 (App.Div.1953) (striking employee held entitled to unemployment compensation benefits after her job had been permanently eliminated during the strike) with *Ablondi v. Board of Review,* 8 *N.J.Super.* 71, 73 *A.*2d 262 (App.Div.1950) and *Gerber v. Board of Review,* 36 *N.J.Super.* 322, 115 *A.*2d 575 (App.Div. 1955), *aff'd,* 20 *N.J.* 561, 120 *A.*2d 436 (1956) (striking employee held disqualified during curtailment or cessation of production caused by labor dispute where full production resumed after settlement of the dispute). It is clear that once Eastern announced the closing of the Newark base, there would be no jobs at the Newark base to which the striking employees could return. Hence as of the closing date, the unemployment was a function of work unavailability, not work stoppage due to a labor dispute. In this respect we further note the apparent

dubiousness of a causal relationship between the strike and Eastern's decision to reduce operations in view of Eastern's promptness, following commencement of the strike, in filing for reorganization based on a permanently reduced level of operation.

■ We reject Eastern's contention that the closing of the Newark base did not result in unavailability of work for Newark-based attendants. First it is obvious that because of its anticipated reduced operations, a large number of attendants would in any event have to be laid off. Beyond that, it is not disputed that acceptance of work at another base, if such work were available, would constitute a genuine hardship for many claimants who would be required to commute on their own time and at their own expense to Miami, Washington or Atlanta as well as New York. Their working hours would be substantially increased by reason of the uncompensated long-distance commute, and they would be required to bear their own lodging expenses in the base city. In short, it cannot be said that a job at another base in another state constitutes suitable work within the intendment of *N.J.S.A.* 43:21–5(c), which lists, as criteria of suitability the distance of the available work from the individual's residence and the employee's "prospect for securing local work in the individual's customary occupation."

Finally, the parties have provided us, pursuant to *R.* 1:36–3, with opinions of other states' agencies dealing with unemployment compensation claims arising out of this strike made by members of claimants' union based in those states. The only one which we find apposite is that rendered by the Massachusetts Board of Review in *Lavers v. Eastern Air Lines,* M–44812–A–et al., decided March 30, 1990. This is so because the announced July 2, 1989, closing of the Logan Airport base is precisely parallel to the announced closing of Newark Airport base, and these are the only base closings included in the announcement. We note, moreover, that the decision reached in *Lavers* is the same with respect to pre-closing status and

post-closing status as that reached by the New Jersey agencies and is based on the same reasoning.

The decision of the Board of Review is affirmed. We remand to the agency for calculation of individual benefits.