83 So.2d 360

Mildred GREENE

v.

DEPARTMENT OF INDUSTRIAL RELATIONS, et al.

3 Div. 965.

Court of Appeals of Alabama.

May 24, 1955.

Rehearing Denied June 30, 1955.

200

Ball & Ball and O. J. Goodwyn, Montgomery, for appellees.

Cooper, Mitch & Black, Birmingham, for appellant.

PRICE, Judge.

Appellant filed claim for unemployment compensation. Her claim was allowed by the claims examiner of the Department of Industrial Relations. W. & W. Pickle

Company, as claimant's last employer, appealed to an appeals referee who rendered a decision authorizing payment of benefits. On appeal, by the employer, the Board of Appeals, by majority vote, reversed the Appeals Referee and disqualified claimant. This appeal is from a judgment of the circuit court denying claimant unemployment benefits on the ground that she left her employment voluntarily without good cause connected with such work.

On August 1, 1951, the contract between claimant's union and her employer, the W. & W. Pickle Company, expired. Negotiations prior to that date to reach agreement on a new contract met with failure and a strike was declared. The strikers, numbering 70 to 80 of the 120 employees of the company immediately established a picket line at the company plant.

The company hired workers to replace the strikers and production was continued at full capacity for the duration of the strike. A company representative testified that production was higher during the strike than it was during the previous year.

On June 26, 1952, the union members voted to terminate the strike and on the morning of June 27 they ceased picketing. The union representative notified the company by letter dated June 28th, but which was postmarked June 30, 1952, and received by the company representative on the morning of July 1st, that the strike was terminated and the strikers were ready to return to their jobs.

On July 1, 1952, a company representative, replying to the letter from the union representative, wrote that it was the company's information that most of the striking members were satisfactorily employed elsewhere and would not be available for work at the company's plant even if there were vacancies. In this letter it was suggested that the company be furnished a list of the individuals who were ready to return to work and that they make individual application for consideration by the company as vacancies occur in the future. The letter stated, however, that there were no vacancies as of that time but that all applications for employment would be considered without regard to participation in the strike or other union activities but entirely upon the basis of the company's needs and the ability of the individuals.

This list of names was never supplied by the union representative. She testified at the hearing before the Appeals Referee, when asked what reply she made to the company's request for the names and addresses of the individuals who were ready to return to work: "At this time I haven't replied, Mr. Ball, because I haven't gotten all the data that was necessary. I didn't know how many people had applied."

On June 30th, without reporting back to the company, claimant registered with the Alabama Unemployment Service and made application for unemployment compensation.

The claimant testified at the hearing before the Appeals Referee, which proceedings were introduced in evidence, that she had not been informed of the company's letter to the union representative when she registered for unemployment benefits. She testified on the trial that she did not return to the company to claim her job because the company's superintendent told the employees the day before they came out on strike that "those who come out on a picket line would not have a job with the company, and they knew my telephone number and some of the workers passed my house and they could have 'phoned me as they did other people. She testified further that she knew that someone else had taken her job because she walked the picket line and saw replacement workers going in and out, but it would be hard to say as to the number because "they got new ones every two or three days, it would not be the same ones."

■ In T. R. Miller Mill Co. v. Johns, 261 Ala. 615, 75 So.2d 675, 676, Mr. Justice Simpson, after quoting subsections A and B of Sec. 214, Title 26, Code 1940, as amended, which subsections are here pertinent, stated: "The fundamental theory

of unemployment compensation in connection with the above quoted subsections of the statute is that workers are not entitled to compensation where their unemployment was directly due to a 'labor dispute' still in active progress in the establishment where last employed, but that when the strike shall have been ended if his unemployment so resulted he would be entitled to unemployment compensation if thereafter, without his fault, he should be rendered unemployed." The court further stated: "When a person goes or is forced out on a strike because of a labor dispute, he has not 'left his employment' within the meaning of subsec. B. It is well settled that such a strike does not sever the employer-employee relationship", citing numerous authorities.

The existence of a labor dispute is not questioned here, and no claim is made for compensation during the time the dispute was in progress.

Appellee seeks to uphold the lower court's decision on the theory that claimant, by failing to return to her job after the termination of the strike, voluntarily left her work within the meaning of the unemployment compensation law.

It is claimant's contention that her employment was terminated by the employer's act of hiring a permanent replacement for her job while she was out on strike, that under such circumstances, to have returned to claim a job which she no longer had would have been a futile act, and that "It is an old maxim of the law that it compels no man to do a useless act." Citing Williston on Contracts, Sec. 698A.

It is evident from the letter written to the union representative and the following testimony of the witness Ball, attorney and vice President of appellee Company, that the company considered the workers it had hired to replace the strikers to be permanent employees:

"Q. Well, on July 1, 1952, then, when you received this letter (from the union representative) was your company in a position to return all of the people back to their former jobs? A. I could answer that only by saying that we have a turnover out there. On that particular day there was no vacancy. The possibility that there might be a vacancy may be the next day, or the next week, or at any time, was always there. Employees move away, and they quit, and they die, and one reason or another, but at that particular moment, there was no vacancy. * * *

"Q. What I was trying to get at, if anyone had made application for their old job back, would they have put them back on their old job?" A. We would not discharge someone that had that job in order to put someone there that had left the job; but if there was a vacancy, and these people had made application, they would have been considered for employment without any drawback or any disadvantage of having been out on strike."

We have not found, nor have we been cited to, a case where the exact question at issue has been passed upon in this or any other State.

■ After a careful consideration of the evidence we are of the opinion that claimant's employment was terminated by her employer when she went out on strike, and not by her failure to report back to the company at the end of the strike, and that she was not disqualified under Sec. 214, subd. B of Title 26, Code 1940.

■ Appellee advances the argument in brief that "due to his finding that appellant voluntarily left her employment without good cause connected with her work, the court below found it unnecessary to decide the issue of availability for work. However, claimant had the burden of proving her availability and we seriously contend that she failed in this regard."

It appears that the theory on which the case was tried below was whether the claimant left her work voluntarily without good cause connected with such work, although the claimant testified she was "available" for work and in addition to registering and reporting to the employ-

ment office she called the Troy Laundry and the Armour Packing Company and went to the Chemical Company seeking work.

■ In 81 C.J.S., Social Security and Public Welfare, § 234, pp. 351–352 it is said: "The appellate court will not ordinarily pass on a question not raised in the lower court. * * *"

■ Since the question of whether claimant had met the burden that was upon her to show her availability for work was not raised or passed upon by the trial court, we do not consider it here.

■ Appellee contends that great weight must.be given to the judgment of the trial court. We are familiar with the rule that in cases tried by the court without a jury, with the witnesses before him, the judgment is given the effect of a jury verdict and will not be disturbed unless the preponderance of the evidence against it is so decided as to clearly convince the court that it is wrong or unjust, however we are of the opinion that the lower court took an erroneous view of the law as applied to the undisputed facts, and such rule is not here applicable. Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496; Department of Industrial Relations v. Haynes, 259 Ala. 238, 67 So. 2d 62.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

## On Motion for Rehearing

At appellee's request the trial court's finding of facts is here set out:

"The Court finds that plaintiff, along with other union members, went out on strike on August 1, 1951, when the then existing contract between the plaintiff's employer and her union expired.

"The plaintiff's employer hired other workers to enable it to continue operations during the strike.

"The union established picket lines around the employer's plant and the labor dispute, strike and picketing continued until the company was notified by the union representative, by letter dated June 28, 1952, which, however, was not mailed until 4:00 p. m. June 30, 1952, advising the company that the strike had been terminated and that the union members were ready to return to work. This notification was not received by the company until July 1, 1952, at which time the company advised by letter that each employee should make individual application for work.

"It further requested that it be furnished a list of names and addresses of each of the individuals who were ready to return to work. It stated further in said letter that it was understood that most of the striking employees were satisfactorily employed elsewhere. None of the striking employees returned to the employer to claim their jobs at the termination of the strike and it further appears from the evidence that on June 30, 1952, before the company received notice that the strike had terminated, plaintiff and other striking employees filed claims for unemployment compensation.

"None of the employees made individual inquiry as to whether the company would return them to work.

"On a hearing of this case before the Appeals Referee on August 18, 1952, the union representative was asked what reply she made to the company's request for a list of names and addresses of the individuals who were ready to return to work and she stated: 'At this time I haven't replied, Mr. Ball, because I haven't gotten all the data that was necessary. I didn't know how many people had applied.'

"At this same hearing plaintiff testified that she had not been notified of the company's letter to the union representative; that she had not been back to claim her job; and that the company had her phone number and knew where she lived if they wanted her to come back to work.

"The Court having considered the evidence and the record as submitted is of opinion that plaintiff voluntarily terminated

her employment with her employer and, therefore, is disqualified to receive unemployment compensation."

Opinion extended. Application for rehearing overruled.

Application overruled.