106 So.2d 882

**AVONDALE MILLS**

v.

**George BURNETT.**

6 Div. 458.

Court of Appeals of Alabama.

March 25, 1958.

Rehearing Denied June 17, 1958.

Reversed on Mandate Nov. 18, 1958.

David J. Vann, Wm. Bew White, Jr., and White, Bradley, Arant, All & Rose, Birmingham, for appellant.

Erwin C. Betts, Birmingham, for appellee.

PRICE, Judge.

This is an appeal from a judgment of the Circuit Court of Jefferson County awarding appellee, George Burnett, unemployment compensation.

The evidence for claimant tends to show that Mr. Burnett had been employed by Avondale Mills, hereafter referred to as the Company, since 1948. Originally his principal duties consisted of laying up roving, a form of yarn, pushing boxes of roving to the elevator and getting empty boxes. In 1952 or 1953 he was given the additional tasks of getting bobbins, cleaning the pipes, wheels and windows, sweeping the floor, a task which formerly an employee had been paid full time to do, carrying out waste from the fixer and carrying time books to the company office. Also, during a period when the roving hauler on the third shift was laid off, claimant was required to lay up about 18 or 30 additional boxes of roving.

Claimant stated that on his last day at work his immediate superior, Mr. Walt Jones, the assistant foreman, told him that in addition to his other duties he would be required to push all cans of "drawing" from the frames, push out the cans and brush them, and straighten up the big alley. Claimant replied he already had more work than he could do; whereupon Mr. Jones said, "if you don't do it you are fired." Mr. Burnett started carrying his brooms toward the front of the room, and Mr. Jones said, "I mean for you to go out now." "Punch your card."

Claimant left without punching his card. He never went back to the mill, but he did go to the office next morning and was given some papers and sent to "personnel." He told personnel, "they put so much work on me I can't do it."

Claimant said he knew about the company's policy with reference to grievances and that he had once signed a job complaint. He did not know of his own knowledge what the company policy was relative to the discharge of employees. He also stated that he could only write his name and was unable to read.

The testimony for the company tended to show that during claimant's employment there were 30 to 33 speeders in the Card room, but in January, 1955, to make room for new equipment due in April, the company started removing a few speeders at a time until some 15 had been removed, thus reducing the amount of roving hauling, and for this reason Mr. Burnett was to be given the additional duty of pushing drawing to the lap winders, a task which would take 15 or 20 minutes once or twice a day. There had been a period when the third shift roving hauler was laid off, but at this time there was a roving hauler on that shift.

The president of the company was the only person authorized to discharge an em-

ployee after a ninety days' probationary period. The assistant foreman could not terminate anyone. The foreman had authority to suspend an employee from one day to thirty days and could recommend that he be terminated. The assistant foreman had no authority to suspend anyone unless it was delegated to him by the foreman. The foreman, Mr. Summers, said Mr. Jones had authority to lay off an employee for as long as one week.

Mr. Summers stated Mr. Burnett was a very good worker and he was satisfied with his work and he did not recommend that he be terminated after he left. Mr. Burnett came back next day and he told him where to get his money but this was all he said to him.

· Mr. Jones testified that in a written statement prepared at the time of the occurrence, he reported, "I told him if he was not going to push the drawing he would have to punch his card and go home. Mr. Burnett walked off his job and went home without punching his card," but that he thought Mr. Burnett would be back next day.

Mr. Heflin Haynes, Personnel Director of Avondale Mills, testified that in 1952 the company's grievance procedure went into effect. Notice of the establishment of the procedure was given to the employees by an article in the Avondale Sun, the company's bi-weekly newspaper, and by printed booklets entitled "Procedure for Handling Employee Problems or Complaints" which were given to every employee. One of the booklets was introduced in evidence as defendant's exhibit "B." The booklet sets out a step by step procedure for making complaints connected with the job. On cross-examination Mr. Haynes testified there was nothing in the newspaper article nor in the booklet which set out the lack of authority of foreman or assistant foreman to discharge an employee. He further testified that it would be the duty of foremen requesting termination of an employee to take the employee to the superintendent and to inform the employee of the steps to take to defend himself. To show his

knowledge of other company programs, the witness stated Mr. Burnett had purchased one of the company houses, and that information as to their availability was given to the employees through the Avondale Sun and by putting it on bulletin boards.

Mr. Haynes stated he was familiar with Mr. Burnett's personnel file, and that claimant was not discharged, he quit.

Subsection B of Section 214 of Title 26, Code 1940, as amended, provides that an individual shall be disqualified for unemployment benefits "if he has left his employment voluntarily without good cause connected with such work. "

Appellant contends that "the undisputed evidence showed that appellee's unemployment was due to his refusal to perform, or even to attempt to perform, properly assigned duties, and, thus, that he voluntarily left his employment without good cause for so doing," and assigns as error the court's judgment awarding compensation and its denial of the motion for a new trial.

■ Our Supreme Court has held that the purpose of the unemployment compensation legislation is to relieve hardship caused by enforced unemployment not voluntarily created by the worker. Ex parte Alabama Textile Products Corporation, 242 Ala. 609, 7 So.2d 303, 141 A.L.R. 87.

In Department of Labor and Industry v. Unemployment Compensation Board of Review, 133 Pa.Super. 518, 3 A.2d 211, 213, the court said: "The word, 'voluntarily', may be used in a number of different senses, but, in our opinion, having regard to the purpose and intent of the act, * * * but with special reference to its declaration of public policy, * * *, and its fourth article, * * *, which prescribes the qualifications required to secure compensation and enumerates the causes which will make an employe ineligible for compensation, the most appropriate meaning or definition is, 'of one's own motion' (Century Dictionary); 'of one's own accord' (Ox-

ford Dictionary); 'acting of one's self' (Webster's New International Dictionary). When we say 'He left work voluntarily', we commonly mean, he left of his own motion; he was not discharged. It is the opposite of a discharge, dismissal or lay-off by the employer or other action by the employer severing relations with his employes, to provide against which the act was mainly designed."

"An employee ordinarily is deemed to have left his work voluntarily when he has left of his own motion or accord as opposed to a discharge, dismissal, or layoff by the employer, or other action by the employer severing relations with his employees." 81 C.J.S. Social Security and Public Welfare § 164, p. 249. See also Moulton v. Iowa Employment Security Commission, 239 Iowa 1161, 34 N.W.2d 211.

In Dwight Manufacturing Co. v. Long, 36 Ala.App. 387, 56 So.2d 685, it was held that when the extraneous facts and surrounding conditions are examined and considered it may be determined that an employee's seemingly voluntary act of leaving the job was in fact involuntary.

We are of the opinion that the facts and circumstances shown here were sufficient to sustain the judgment of the circuit court awarding claimant compensation, and that the motion for new trial was overruled without error.

In Greene v. Department of Industrial Relations, 38 Ala.App. 199, 83 So.2d 360, certiorari denied 263 Ala. 564, 83 So.2d 364, we said that where the question as to whether claimant has met the burden imposed upon him to show his availability for work was not raised or passed upon by the trial court it will not be considered here. The judgment entry recites: " * *, this cause is entered upon and tried this date on the following defenses interposed by the Department of Industrial Relations: (1) That the employee voluntarily left his work without good cause connected therewith, and the evidence being heard and considered, the court finds the issues in favor of the employee, George Burnett, for twenty (20) weeks of unemployment compensation at the rate of $20.00 per week or a total of $400.00, and judgment is hereby rendered accordingly."

The judgment entry clearly shows that the question of availability was not passed upon by the trial court.

The judgment is affirmed.

Affirmed.

PER CURIAM.

Reversed and remanded on authority of Avondale Mills v. Burnett, Ala., 106 So.2d 885.