381 So.2d 651 (1980)
DEPARTMENT OF INDUSTRIAL RELATIONS, Westala Coal Company
v.
Louis NIX, Norman Murray.
Civ. 2051.
Court of Civil Appeals of Alabama.
March 19, 1980.
George Cocoris, Gen. Counsel of Dept. of Indus. Relations, Craig A. Donley, Asst. Gen. Counsel of Dept. of Indus. Relations, Montgomery, Stephen A. Rowe of Lange, Simpson, Robinson & Somerville, Birmingham, for appellants.
William E. Mitch and Earl V. Brown, Jr., of Cooper, Mitch & Crawford, Birmingham, for appellees.
BRADLEY, Judge.
The appellants, the Department of Industrial Relations and Westala Coal Company (hereinafter referred to as "Industrial Relations" or "Westala") appeal from a Walker County Circuit Court judgment in favor of appellees, Louis Nix and Norman Murray. We affirm.
Westala Coal Company, before December 5, 1977, had actively engaged in strip mining bituminous coal at Black Pond in Winston County, Alabama.
A collective bargaining agreement had existed prior to this time between Westala *652 and the United Mine Workers of America (UMWA) which governed the wages, working conditions and hours of its rank and file employees. This agreement expired at midnight on December 5, 1977. Louis Nix and Norman Murray were UMWA members employed by Westala.
Collective bargaining procedures are usually conducted between the Bituminous Coal Operators Association (BCOA) and UMWA, which negotiations began December 5, 1977 and ended in agreement on March 28, 1978.
When the national coal strike commenced on December 5, 1977, Westala ceased its operations. However, because Westala was not a member of BCOA, it preferred to negotiate independently with the UMWA after March 28, 1978 concerning a contractual arrangement with its company.
Several meetings took place with the union; however, having reached an impasse, negotiations ended May 26, 1978. There have been no further meetings, nor any attempts to meet, between the two parties.
Shortly after this, Westala, in June 1978, retained only one foreman and one secretary. The secretary was transferred to another of Westala's companies in October 1978, and the foreman requested termination around the same period. Westala's vice president testified that a week prior to trial in September 1979, some of Westala's machinery was sold due to financial reasons. He further testified that the company had ordered no supplies, nor had it mined any coal. The company had, in effect, ceased functioning as a business, though the company still owns the mine properties.
The claimants, Nix and Murray, signed up for unemployment compensation but were denied benefits. An appeal was thereafter made to an appeals referee which also denied benefits. This decision was upheld on further appeal by the board of appeals. At a trial de novo, the circuit court reversed the earlier decisions and awarded the claimants unemployment compensation on August 6, 1979. An appeal was then made to this court.
There are two issues presented before this court on appeal. The first issue is whether or not the labor dispute was in active progress thereby disqualifying the claimants from unemployment compensation.
The Alabama unemployment compensation statute is stated in § 25-4-78 of the 1975 Code of Alabama.
An individual shall be disqualified for total or partial unemployment:
(1) Labor dispute in place of employment.For any week in which his total or partial unemployment is directly due to a labor dispute still in active progress in the establishment in which he is or was last employed. For the purposes of this section only, the term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee. This definition shall not relate to a dispute between an individual worker and his employer. [Emphasis added.]
Appellants claim that even though negotiations have ceased, the claimants should still be disqualified as the labor dispute is still in active progress.
In the present case the following stipulation was put into the record concerning the events of the last bargaining session on May 26, 1978:
There occurred a bargaining session of some duration probably of over an hour. At the conclusion of which the differences between the parties had not been resolved and the meeting was terminated with the understanding between the parties that if there were any change in the position the parties would be in touch with each other and there has been no subsequent contact between the parties in regard to the resumption of negotiations.
*653 The claimants recognize that they are not entitled to any compensation from December 5, 1977 to May 26, 1978, as negotiations were ensuing. However, claimants do contend that as negotiations had come to an impasse, they were out of work when there was no longer a labor dispute going on as defined in the statute.
Charles L. Fuller, president of district 20 of UMWA, wrote a letter to the union members in August 1978 stating:
Gentlemen: The labor dispute between Westala Coal Company, Inc., and the United Mine Workers of America has been terminated because negotiations have reached an impasse and we have been informed by management that they plan to close the mines.
This is a definite statement of the UMWA's position that the labor dispute was terminated between Westala and UMWA. As a member of the union, the claimants can negotiate only through their agents, UMWA. The conclusion of the union that negotiations were terminated is substantial evidence that the dispute was no longer active.
At the outset we should note that the unemployment compensation statute should be liberally construed in claimant's favor and the disqualifications from benefits should be narrowly construed. Department of Industrial Relations v. Smith, Ala. Civ.App., 360 So.2d 726 (1978).
In T. R. Miller Mill Co. v. Johns, 261 Ala. 615, 75 So.2d 675 (1954), it was stated:
The fundamental theory of unemployment compensation in connection with the above-quoted subsections of the statute is that workers are not entitled to compensation where their unemployment was directly due to a "labor dispute" still in active progress in the establishment where last employed, but that when the strike shall have been ended if his unemployment so resulted he would be entitled to unemployment compensation if thereafter, without his fault, he should be rendered unemployed.
The rationale of Johns was applied in Greene v. Department of Industrial Relations, 38 Ala.App. 199, 83 So.2d 360, cert. den., 263 Ala. 564, 83 So.2d 364 (1955). In Greene, a company employer replaced striking workers, and after termination of the strike an employee failed to show up for work. We held that the disqualification did not survive the termination of the active dispute and that therefore the employee was entitled to compensation.
No Alabama case addresses the question of whether a labor dispute is still in active progress when an employer terminates the business. However, courts in other jurisdictions have held that an employer's decision to cease operations altogether, or at least with respect to that portion of the business affected by the claimant's strike, would operate to terminate the claimant's disqualification under the labor dispute section of the unemployment compensation statute. Great A & P Tea Co. v. New Jersey Department of Labor & Industry, 29 N.J.Super. 26, 101 A.2d 573 (1953); Kitchen v. G. R. Herberger's, Inc., 262 Minn. 135, 114 N.W.2d 64 (1962).
For the foregoing reasons, we hold that the finding of the trial court that the labor dispute was not actively in progress as of May 26, 1978 is adequately supported by the evidence and we will not reverse.
The second issue raised by appellants is whether the trial court erred in awarding unemployment benefits after May 26, 1978.
Based on the above facts and decisions, we find that it did not. The trial court's judgment is due to be affirmed.
AFFIRMED.
WRIGHT, P. J., concurs.
HOLMES, J., concurs specially.
HOLMES, Judge (Concurring specially).
I concur specially.
The testimony in this case reveals, in addition to those facts as stated in the majority opinion, that the claimants are ready, willing, and able to return to work upon the execution of a new collective bargaining agreement. The testimony also reveals that the employer is ready to resume operation upon the execution of an agreement.
*654 These facts, to me, therefore establish that there is in fact a labor dispute existing between the parties. However, the pertinent statute, § 25-4-78, Code of Ala. 1975, requires that the labor dispute be in active progress.
"Active" has been defined as "expressing action as distinct from mere existence or state . . . ." Webster's Third New International Dictionary. In this instance, with the above definition in mind, I find there is evidence to support the trial court's conclusion that there did not exist such a labor dispute in active progress so as to disqualify the claimant.